UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

TRG OASIS (TOWER ONE), LTD.
TRG OASIS (TOWER TWO), LTD.
THE RELATED GROUP
THE RELATED GROUP OF FLORIDA
THE RELATED GROUP, GP
THE RELATED GROUP OF FLORIDA, GP     CASE NO.: 22-21346-CIV-SCOLA
RELATED FLORIDA, LTD.
RELATED FLORIDA, INC.
RELATED GENERAL OF FLORIDA, LTD.
RELATED FLORIDA, LLC
PEREZ ROSS HOLDINGS, LLC
RELATED GENERAL OF FLORIDA, LLC
TRG FT. MYERS, INC.
JORGE PEREZ, AN INDIVIDUAL

     Plaintiffs,

v.

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY,

     Defendant.

_____/

**FIRST AMENDED COMPLAINT**

     Plaintiffs, TRG Oasis (Tower One), Ltd. ("TRG Tower One"); TRG Oasis (Tower Two),

Ltd. ("TRG Tower Two"); and The Related Group, The Related Group of Florida, The Related

Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related

General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of

Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez (collectively, "TRG Claimants") sue

Defendant, Crum & Forster Specialty Insurance Company ("Crum"), and in support of this First

Amended Complaint state:

## NATURE OF THE ACTION

1.     This action concerns an insurance coverage dispute between Plaintiffs and Crum that stems from Crum's failure to defend and indemnify Plaintiffs from lawsuits alleging construction defects brought by the condominium associations of two condominium developments, one of which was developed by TRG Tower One and one of which was developed by TRG Tower Two.

2.     Indeed, for suit filed on one project, Crum never responded to TRG Tower One's repeated tenders for coverage over a 3-year period and thus Crum wholly failed to honor its obligations to defend and indemnify TRG Tower One and the TRG Claimants.

3.     For the suit on the other project, Crum initially provided a defense to TRG Tower Two (although belatedly), but then, without explanation to TRG Tower Two, abruptly withdrew its defense of TRG Tower Two.  Crum failed to again honor its defense obligations, despite clear coverage, and failed to indemnify TRG Tower Two for settlement of the suit.  TRG Tower Two and the TRG Claimants later learned that Crum had settled the suit on behalf of Crum's other insureds, to the exclusion of TRG Tower Two and the TRG Claimants, and with no notice to or consultation with TRG Tower Two or the TRG Claimants, and then pulled its defense of TRG Tower Two as a result.

4.     Crum materially breached the relevant insurance policies and its conduct here violates well-established Florida law designed to protect insureds.

## PARTIES

5.     TRG Oasis (Tower One), Ltd. is an inactive Florida limited partnership with its principal place of business in Miami, Florida.  TRG Tower One is an additional insured under the commercial general liability policies issued by Crum.  All members of TRG Oasis (Tower One), Ltd. are citizens of Florida.

6.     TRG Oasis (Tower Two), Ltd. is an inactive Florida limited partnership with its principal place of business in Miami, Florida.  TRG Tower Two is an additional insured under the commercial general liability policies issued by Crum.  All members of TRG Oasis (Tower Two), Ltd. are citizens of Florida.

7.     The Related Group is a Florida general partnership with its principal place of business in Miami, Florida.  The Related Group is an additional insured under the commercial general liability policies issued by Crum.  All members of the Related Group are citizens of Florida and New York.

8.     The Related Group of Florida is a Florida general partnership with its principal place of business in Miami, Florida.  The Related Group of Florida is an additional insured under the commercial general liability policies issued by Crum.  All members of the Related Group of Florida are citizens of Florida.

9.     The Related Group, GP is a partnership organized under Florida law with its principal place of business in Miami, Florida.  The Related Group, GP is an additional insured under the commercial general liability policies issued by Crum.  All members of the Related Group, GP are citizens of Florida.

10.     The Related Group of Florida, GP is a partnership organized under Florida law with its principal place of business in Miami, Florida.  The Related Group of Florida, GP is an additional insured under the commercial general liability policies issued by Crum.  All members of the Related Group of Florida, GP are citizens of Florida.

11.     Related Florida, LLC is a limited liability company organized under Florida law with its principal place of business in Miami, Florida.  Related Florida, LLC is an additional

insured under the commercial general liability policies issued by Crum. All members of Related Florida, LLC are citizens of Florida.

12.     Related Florida, Ltd. is an inactive limited partnership organized under Florida law with its principal place of business in Miami, Florida. Related Florida, Ltd. is an additional insured under the commercial general liability policies issued by Crum. All members of Related Florida, Ltd. are citizens of Florida.

13.     Related Florida, Inc. is a Florida corporation with its principal place of business in Miami, Florida. Related Florida, Inc. is an additional insured under the Crum commercial general liability policies.

14.     Related General of Florida, Ltd. is an inactive Florida limited partnership with its principal place of business in Miami, Florida. Related General of Florida, Ltd. is an additional insured under the commercial general liability policies issued by Crum. All members of Related General of Florida, Ltd. are citizens of New York.

15.     Perez Ross Holdings, LLC is a limited liability company organized under Florida law with its principal place of business in Miami, Florida. Perez Ross Holdings, LLC is an additional insured under the commercial general liability policies issued by Crum. All members of Perez Ross Holdings, LLC are citizens of Florida and New York.

16.     Related General of Florida, LLC is a limited liability company organized under Florida law with its principal place of business in Miami, Florida. Related General of Florida, LLC is an additional insured under the commercial general liability policies issued by Crum. All members of Related General of Florida, LLC are citizens of Florida.

17.     TRG Ft. Myers, Inc. is a Florida corporation with its principal place of business in Miami, Florida.  TRG Ft. Myers, Inc. is an additional insured under the Crum commercial general liability policies.

18.     Jorge Perez is an individual who is a resident of Florida.  Mr. Perez is an additional insured under the commercial general liability policies issued by Crum.

19.     Crum & Forster Insurance Company is a Delaware corporation with its principal place of business in Morristown, New Jersey.  Crum is a surplus lines insurer authorized to sell insurance in the state of Florida.

20.     Crum issued the subject commercial general liability insurance policies to MCW and West Coast and agreed to insure TRG Tower One, TRG Tower Two, and the TRG Claimants as additional insureds under the policies.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity of citizenship exists as the Plaintiffs and Defendant are citizens of different states.

22.     This Court has personal jurisdiction over Crum because it: (i) is an authorized insurer in Florida, (ii) generally transacts business throughout Florida, and (iii) contracted to insure Florida entities and individuals, including the TRG entities, MCW, and West Coast.  Indeed, Crum issued the subject policies to MCW and West Coast in Florida.

23.     Venue is properly placed under 28 U.S.C. § 1391, as this is a diversity action in which a substantial part of the events or omissions giving rise to the claims and losses occurred in this judicial district.

## **FACTUAL BACKGROUND**

### **Subcontractor Agreements**

#### *Tower One*

24.     MCW and West Coast entered into subcontract agreements with BBL for work on

Tower One.  For Tower One, TRG Oasis (Tower One), Ltd., later renamed TRG Oasis, Ltd., was

identified as the "Owner."

25.     The subcontract agreements provide:

> 8.1 The Subcontractor shall purchase from and maintain in a
> company or companies licensed to do business in the jurisdiction in
> which the Project is located such insurance as will protect BBL, the
> Owner, and their agents from claims which may arise out of or result
> from the Subcontractor's operations under the AGREEMENT, and
> for which BBL, the Owner, and their agents may be held liable,
> whether such operations be by the Owner, BBL, Subcontractor or
> by anyone directly or indirectly employed by them or subcontracted
> with or by anyone for whose acts any of them may be liable.
> Annexed hereto as Exhibit 5 is a schedule of the types of insurance
> and minimum amounts required to be purchased and maintained by
> the Subcontractor throughout its work on the Project.

26.     The subcontracts required that MCW and West Coast insure TRG Tower One, as

Owner, and TRG Tower One's agents, including the TRG Claimants against any claims that may

arise out of or result from MCW's or West Coast's operations at Tower One.

27.     The subcontracts contain a sample certificate of insurance that, among other types

of insurance, identified General Liability coverage, with at least $1 million each occurrence and

$2 million aggregate limits of insurance, as insurance that the subcontractors had to purchase and

maintain.

28.     The sample certificate of insurance identifies "BBL Florida LLC" as the certificate

holder and states that as to "General Liability, Automobile Liability & Excess Liability" the

relevant TRG entity for that tower "or any other party as required by subcontract are Additional

Insureds."

29.     The subcontracts also contained the following indemnification provisions:

> 9.1 To the fullest extent permitted by law, the Subcontractor shall
> defend, insure, indemnify, and hold harmless BBL, the Owner, and
> their respective officers, directors, employees and agents from and
> against any and all claims, actions, and liabilities arising out of the
> performance of the Subcontractor's work, or the acts or omissions
> of the Subcontractor's employees, agents, or representatives
> including sub-Subcontractors, or by reason of liability imposed by
> operation of law, for property damage, bodily injury (including
> exposure to toxic substances), illness, or death sustained by any
> person regardless of whether such claim, action, or liability is caused
> in part by a party indemnified hereunder.  It is expressly agreed that
> the first five hundred dollars ($500.00) paid the Subcontractor
> hereunder is being paid as separate consideration for this and any
> other indemnity provided by Subcontractor under the Contract
> Documents.   The monetary limitation on the extent of
> indemnification shall be twice the subcontract sum or $1 Million per
> occurrence whichever is greatest.

### *Tower Two*

30.     Similarly, MCW and West Coast entered into subcontract agreements with BBL

for work on Tower Two.  For Tower Two, TRG Oasis (Tower Two), Ltd. was identified as the

"Owner."

31.     The agreements for Tower Two provide:

> 8.1 The Subcontractor shall purchase from and maintain in a
> company or companies licensed to do business in the jurisdiction in
> which the Project is located such insurance as will protect BBL, the
> Owner, and their agents from claims which may arise out of or result
> from the Subcontractor's operations under the AGREEMENT, and
> for which BBL, the Owner, and their agents may be held liable,
> whether such operations be by the Owner, BBL, Subcontractor or
> by anyone directly or indirectly employed by them or subcontracted
> with or by anyone for whose acts any of them may be liable.
> Annexed hereto as Exhibit 5 is a schedule of the types of insurance
> and minimum amounts required to be purchased and maintained by
> the Subcontractor throughout its work on the Project.

32.     The subcontracts required that MCW and West Coast insure TRG Tower Two, as Owner, and TRG Tower Two's agents, including the TRG Claimants against any claims that may arise out of or result from MCW's or West Coast's operations at Tower Two.

33.     The subcontracts contain a sample certificate of insurance that, among other types of insurance, identified General Liability coverage, with at least $1 million each occurrence and $2 million aggregate limits of insurance, as insurance that the subcontractors had to purchase and maintain.

34.     The sample certificate of insurance identifies "BBL Florida LLC" as the certificate holder and states that as to "General Liability, Automobile Liability & Excess Liability" the relevant TRG entity for that tower "or any other party as required by subcontract are Additional Insureds."

35.     The subcontracts for Tower Two also contained the following indemnification provisions:

> 9.1 To the fullest extent permitted by law, the Subcontractor shall defend, insure, indemnify, and hold harmless BBL, the Owner, and their respective officers, directors, employees and agents from and against any and all claims, actions, and liabilities arising out of the performance of the Subcontractor's work, or the acts or omissions of the Subcontractor's employees, agents, or representatives including sub-Subcontractors, or by reason of liability imposed by operation of law, for property damage, bodily injury (including exposure to toxic substances), illness, or death sustained by any person regardless of whether such claim, action, or liability is caused in part by a party indemnified hereunder.  It is expressly agreed that the first five hundred dollars ($500.00) paid the Subcontractor hereunder is being paid as separate consideration for this and any other indemnity provided by Subcontractor under the Contract Documents.   The monetary limitation on the extent of indemnification shall be twice the subcontract sum or $1 Million per occurrence whichever is greatest.

36.     Per the plain language of the agreements for Tower One and Tower Two, the subcontracts required MCW and West Coast to defend, insure, indemnify, and hold harmless TRG

Tower One, TRG Tower Two, and their respective agents, directors, officers, and employees, including the TRG Claimants, from and against all claims, actions, and liabilities arising out of the work by MCW and West Coast at the projects.

### The Crum Policies

37.     Crum issued five commercial general liability policies to MCW with the following policy numbers and respective policy periods:  GLO 101199 (3/13/2007-3/13/2008), GLO 121015 (3/13/2008-3/13/2009), GLO 141137 (3/13/2009-3/13/2010), GLO 191044 (3/13/2010-3/13/2011), and GLO 211393 (3/13/2011-3/13/2012).  The Policies are included in Composite Exhibit A.

38.     Crum also issued commercial general liability policies to West Coast with the following policy numbers and respective policy periods:  GLO 091130 (5/1/2006-5/1/2007), GLO 101284 (5/1/2007-5/1/2008), GLO 131039 (5/1/2008-5/1/2009), GLO 151014 (5/1/2009-5/1/2010), GLO 191182 (5/1/2010-5/1/2011), and GLO 211597 (5/1/2011-5/1/2012) (the policies Crum issued to MCW and West Coast are collectively referred to as the "Policies").  The Policies are included in Composite Exhibit A.

39.     The Policies' insuring agreements provide in relevant part:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY[1]**

1.      **Insuring Agreement**.

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.

---

[1]The MCW GLO 141137 (3/13/2009-3/13/2010) policy should contain substantially similar language as the other Policies, however, TRG is not in possession of a full, certified copy.

40.     In turn, "Property damage" is defined as:

 a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

Ex. A, Policies.

41.     The Policies contained the following additional insured endorsement for damage

from ongoing operations:[2]

### ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS — SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE

Name Of Additional Insured Person(s) Or Organization(s):  As required by written contract

Locations:  As required by written contract

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

 A. **Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:

  1. Your acts or omissions; or

  2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

---

[2]MCW  GLO  101199  (3/13/2007-3/13/2008), GLO  121015  (3/13/2008-3/13/2009), GLO  141137  (3/13/2009-3/13/2010), GLO 191044 (3/13/2010-3/13/2011), and GLO 211393 (3/13/2011-3/13/2012) contain additional insured endorsements with substantially similar language, providing additional insured status to the Plaintiffs.  The Policies are included in Composite Exhibit A.

**B.**     With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to 'bodily injury' or 'property damage' occurring after:

**1.**     All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.**     That portion of 'your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Ex. A, Policies.

42.     The Policies also contain the following additional insured endorsement for damages

from completed operations:[3]

### ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS — COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE

Name Of Additional Insured Person(s) Or Organization(s):  AS REQUIRED BY WRITTEN CONTRACT

Location And Description of Completed Operations:   AS REQUIRED BY WRITTEN CONTRACT

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' at the location designated and described in the schedule of this

---

[3]MCW GLO 121015 (3/13/2008-3/13/2009) and GLO 211393 (3/13/2011-3/13/2012) contain additional insured endorsements with substantially similar language, providing additional insured status to the Plaintiffs.  The Policies are included in Composite Exhibit A.

endorsement performed for that additional insured and included in
the 'products-completed operations hazard'.

Ex. A, Policies.

43.     Per the endorsements, there is coverage under the Policies for anyone who MCW
and West Coast agree to insure under a written contract.

44.     The insurance under the endorsements is for any liability for property damage
caused, at least in part, by the work of MCW and West Coast at the location of the work contracted
for.

45.     The Associations sought to recover damages from, among other parties, TRG
Tower One, TRG Tower Two, and the TRG Claimants for property damage caused, at least in part,
by the construction work of MCW and West Coast at the projects, which was performed per the
subcontracts.

46.     In sum, TRG Tower One, TRG Tower Two, and the TRG Claimants are additional
insureds under the Policies because (i) the subcontracts require MCW and West Coast to insure
them, (ii) the Policies expressly provide for additional insured coverage for anyone when required
by agreements such as the subcontracts, and (iii) the damages sought by the Associations are for
property damage caused, at least in part, by MCW's and West Coast's work at the projects.

### The Underlying Lawsuits & Crum's Failures to Honor its Coverage Obligations

        *a.*     Tower Two

47.     On January 4, 2013, the Oasis Tower Two Condominium Association, Inc. sued
TRG Oasis (Tower Two), LTD., BBL Florida, LLC, and BBL Construction Services, LLC,
("Tower Two Lawsuit").

48.     On March 3, 2015, the Association filed its second amended complaint that
included claims against TRG Oasis (Tower Two), LTD., BBL-Florida, LLC, and BBL

12

Construction Services, LLC, and MCW, along with the other subcontractors.  The second amended complaint is Exhibit B.  MCW's scope of work included waterproofing and caulking.

49.     The Association claims it discovered many defects proximately caused by the improper design or construction.  Specifically, the Association alleged "numerous defects with respect to the stucco and building envelope[,]" "defects at the marina, finger piers and seawall[,]" "at the pool amenity deck[,]" and with the "post tension system[.]"  (Ex. B, Second Amended Compl. ¶¶ 30-34.)

50.     There are many other allegations of specific defects to other parts or components of the building.  (*See* Ex. B, Second Amended Compl. ¶¶ 35-45.)

51.     MCW was among the defendants specifically referenced for causing the defects.

52.     On July 12, 2016, TRG Tower Two tendered the Tower Two Lawsuit to Crum and asked for defense and indemnification as an additional insured under the Policies.  Ex. C.

53.     On July 21, 2016, TRG Tower Two sent another letter to Crum asking for coverage as an additional insured.  Ex. D.

54.     On August 22, 2016, Crum issued a reservation of rights letter to TRG Tower Two saying that TRG Tower Two "qualifies as an additional insured" and agreed to defend TRG Tower Two, in the Tower Two Lawsuit, "as an additional insured to all asserted claims under policy numbers GLO 101199 and GLO 121015[.]"  Ex. E.  Each of those policies separately provides $2 million in coverage.

55.     In its August 22 reservation of rights letter, Crum also told TRG Tower Two that it would be in contact shortly about appointment of defense counsel.

56.     Because Crum had not yet appointed defense counsel, on November 22, 2016, TRG Tower Two sent Crum another request for defense and indemnity coverage for the Tower Two Lawsuit.

57.     On December 16, 2016, the Association filed its Third Amended Complaint, which added other TRG entities and an individual, including The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez.  All these entities and the individual are additional insureds under the Crum policies.

58.     This Third Amended Complaint also named MCW as a defendant and West Coast was sued by BBL as a third-party defendant.  West Coast's scope of work was roofing.  The Third Amended Complaint is Exhibit F.

59.     The third amended complaint contained allegations like those set forth above, implicating the work of MCW and West Coast.

60.     TRG Tower Two again, on April 24, 2017, renewed its demand for coverage from Crum as coverage was owed for all additional insureds, including those added in the Third Amended Complaint.[4]  Ex. G.

61.     On August 22, 2017, Crum finally appointed Jason Moyer of the Moyer Law Group to defend TRG Tower Two in the Tower Two Lawsuit.  Ex. H.

62.     Shortly after Mr. Moyer was appointed, the Association filed its Fourth Amended Complaint on September 1, 2017.  Ex. I.  TRG Oasis (Tower Two), LTD., The Related Group,

---

[4]Specifically, TRG Tower Two demanded coverage for itself and for Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez.

f/k/a The Related Group of Florida, The Related Group, Related Group of Florida, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., and TRG-FT. Myers, Inc. were named defendants.

63. The fourth amended complaint also contained allegations like those set forth above, which implicated the work of MCW and West Coast.

64. Inexplicably, on April 30, 2018, Crum, without discussion with TRG Tower Two or its counsel, notified Mr. Moyer that the defense by Crum was being withdrawn—improperly leaving TRG Tower Two and the TRG Claimants in the Tower Two Lawsuit without a defense. Ex. J.

65. Crum continued to ignore TRG Tower Two's tenders and other communications.

66. On September 9, 2019, TRG Tower Two, for itself and on behalf of the TRG Claimants involved in the Tower Two Lawsuit, again demanded that Crum (i) immediately reimburse legal expenses, (ii) immediately defend TRG Tower Two and the TRG Claimants against further action in the Tower Two Lawsuit, and (iii) indemnify TRG Tower Two and the TRG Claimants.

67. Additionally, TRG Tower Two advised Crum of ongoing settlement negotiations and gave Crum an opportunity to resolve all coverage claims.

68. Crum failed to provide coverage or contribute to the settlement efforts of TRG Tower Two and the TRG Claimants.

69. On October 28, 2019, TRG Tower Two sent correspondence to Crum demanding indemnification for the costs incurred as a result of Crum's wrongful withdrawal of the defense and its failure to agree to indemnify TRG Tower Two or the TRG Claimants for a settlement of the Tower Two Lawsuit.

70.     On December 19, 2019, after not hearing from Crum, TRG Tower Two, to protect its interests, entered into a reasonable settlement agreement to dismiss all claims against it in the Tower Two Lawsuit.  The settlement was finalized in 2020.

71.     On March 25, 2021, TRG Tower Two and the TRG Claimants wrote Crum again and filed a Florida Civil Remedy Notice of Insurer Violation against Crum.

72.     Upon information and belief, Crum settled the claims against MCW in early 2018 without notifying or communicating with its other insureds, including TRG Tower Two, which left TRG Tower Two and other TRG Claimants exposed to the claims asserted against them in the Tower Two Lawsuit.

73.     Moreover, upon information and belief, in negotiating the settlement agreement for MCW, Crum either requested or permitted the Tower Two Association to amend its complaint to remove allegations relating to MCW's and West Coast's work to try to circumvent coverage for TRG Tower Two and the TRG Claimants.

74.     Indeed, despite Crum's obligations under Florida law, Crum (i) never tried to obtain a settlement that would release all its insureds, including TRG Tower Two and the TRG Claimants, (ii) never made any settlement offers on behalf of TRG Tower Two or the TRG Claimants, and (iii) never even tried to loop TRG Tower Two and the TRG Claimants or their counsel into the negotiations with the Association.

75.     Alternatively, Crum permitted the amendment of the complaint and then sought to benefit from it by using it as a purported reason to withdraw TRG Tower Two's defense, notwithstanding the fact that the amended complaint still implicated issues related to the work by Crum's named insureds, MCW and West Coast.  Thus, regardless of the amendment, Crum still

had a duty to defend TRG Tower Two and the TRG Claimants and to later indemnify TRG Tower Two for the settlement it negotiated, as described above.

76.     Crum's withdrawal of TRG Tower Two's defense and its failure to defend the TRG Claimants in the Tower Two Lawsuit was a material breach of the Policies and in utter disregard for the interests of its insureds.

77.     TRG Tower Two and the TRG Claimants have incurred significant costs and expenses because of Crum's breach.

78.     TRG Tower Two and the TRG Claimants filed another Civil Remedy Notice against Crum on September 22, 2021.

    *b.    Tower One*

79.     On January 27, 2017, Oasis Tower One Condominium Association, Inc. filed suit ("Tower One Lawsuit") against, among other defendants, TRG Oasis (Tower One), Ltd., The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., Jorge Perez, BBL-Florida, LLC, MCW Acquisition, LLC d/b/a Metro Caulking & Waterproofing, and West Coast Florida Enterprises, Inc. f/k/a West Coast Roofing & Waterproofing, Inc., for damages from the construction of Tower One.  The complaint is Exhibit K.

80.     The complaint for the Tower One Lawsuit contained allegations related to deficiencies in the work of MCW and West Coast.

81.     Specifically, the Association alleged that defects and deficiencies associated with MCW included, but were not limited to, "[i]nadequate slope of concrete balcony decks … [c]racked post-tensioned balcony slabs … [i]mproper application/termination of waterproofing

membrane at balcony deck flashings in violation of FBC … [and] … [i]mproper installation of guardrail posts at balconies[.]"  Ex. K, Compl. ¶ 68.

82.     The Association also alleged that defects and deficiencies associated with West Coast included, but were not limited to, "[w]ater trapped under roll roofing and seeping through the wall stucco, causing leaks through the roof slab and walls … [s]cuppers not properly sealed to roof membrane … [and] … [s]cuppers not properly installed or sealed around wall penetration[.]" Ex. K, Compl. ¶ 73.

83.     Among other things, the Association sought to recover the costs of repairing the construction deficiencies and actual, incidental, and consequential damages sustained because of the construction defects.

84.     On April 4, 2017, TRG Tower One and the TRG Claimants involved in the Tower One Lawsuit provided Crum with their tender of defense and demand for indemnification for the claims asserted against them (all additional insureds) in the complaint.  Ex. L.

85.     Crum did not respond to the tender within the appropriate timeframes set forth by Florida law, *see e.g.,* Fla. Stat. 627.426.  In fact, Crum didn't respond at all.

86.     On May 22, 2019, TRG Tower One issued another notice and tenders to MCW and West Coast, with copies to Crum.

87.     In August 2019, for the first time, and as part of TRG Tower One's further follow-up, Crum orally advised TRG Tower One that there was coverage for TRG Tower One and Crum's representative stated, for the first time, that Crum had responded to TRG Tower One's tenders for coverage—despite not doing so.

88.     Crum's representative told TRG Tower One that it had retained and assigned defense counsel for TRG Tower One in the Tower One Lawsuit.  But that was not true.

89.     Crum had not honored its coverage obligations under the Policies and had not yet retained nor assigned defense counsel for TRG Tower One or any of the TRG Claimants involved in the Tower One Lawsuit.

90.     Crum had not responded to TRG Tower One's requests for coverage.  And, even after making those representations, Crum subsequently failed to appoint counsel for TRG Tower One or any of the TRG Claimants, and issued no written coverage position, despite orally acknowledging coverage.

91.     On August 16, 2019, TRG Tower One advised Crum that despite the claim handler's statement, Crum had still not yet acknowledged, in writing, its coverage obligations under the Policies and that Crum had not yet retained counsel for TRG Tower One or the TRG Claimants in the Tower One Lawsuit.

92.     Rather than realize its complete failure to honor its coverage obligations and offer to provide a defense, Crum did not respond at all—effectively now refusing to acknowledge coverage.

93.     TRG Tower One provided Crum proof that the counsel mentioned by Crum appeared in the Tower One Lawsuit only on behalf of the general contractor – not TRG Tower One or the TRG Claimants, and that there had been no communication from Crum to TRG Tower One or to any of the TRG Claimants about providing a defense or defense strategy.

94.     On September 9, 2019, TRG Tower One and the TRG Claimants demanded from Crum (i) immediate reimbursement of legal expenses incurred, (ii) immediate defense of TRG Tower One and the TRG Claimants in the Tower One Lawsuit, and (iii) that Crum participate in settlement efforts.  Crum again failed to respond to the demand or even acknowledge the correspondence.

95.     On October 28, 2019, TRG again sent correspondence to Crum demanding defense and indemnification for the costs and expenses incurred because of Crum's failure to acknowledge its coverage obligations.  Crum did not respond.

96.     On December 19, 2019, TRG Tower One entered into a reasonable settlement agreement to dismiss all claims against it in the Tower One Lawsuit to protect its interests.

97.     The claims asserted against TRG Tower One and the TRG Claimants in the Tower One Lawsuit are covered under the plain terms of the Policies.  Thus, Crum owed TRG Tower One and the TRG Claimants involved in that lawsuit a contractual obligation to defend and indemnify them for the claims by the Association.

98.     In material breach of the Policies, Crum failed to defend TRG Tower One or any of the TRG Claimants in the Tower One Lawsuit, despite countless demands.

99.     TRG Tower One, TRG Tower Two, and the TRG Claimants have satisfied any conditions precedent to filing this Complaint or such conditions have been waived by Crum.

## COUNT I — DECLARATORY JUDGMENT (TOWER ONE)

100.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez re-allege paragraphs 1 through 100 as if fully set forth here.

101.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek the Court's declaration of the parties' rights and duties under the Policies under 28 U.S.C. § 2201.

102.     A justiciable controversy exists between TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez and Crum about whether any and/or all of the Policies provide coverage for the claims against them and whether Crum had an obligation to pay defense costs in connection with the Tower One Lawsuit.

103.     The controversy between TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez and Crum is ripe for judicial review in light of Crum's initial oral admission of coverage and later refusal to provide coverage and failure to respond to requests for coverage.

104.     Thus, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek a declaration from the Court that they are entitled to coverage, under the Policies, for the Tower One Lawsuit and if not all of the Policies, they seek a declaration from the Court as to which policies provide coverage.

105.     Specifically, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek a declaration that Crum had

a duty to defend them, as additional insureds under the Policies, against the Tower One Lawsuit and if not all of the Policies, they seek a declaration from the Court as to which policies provide coverage.

WHEREFORE, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek a declaration from the Court that they are entitled to coverage, under the Policies, for the Tower One Lawsuit, as well as attorneys' fees under Fla. Stat. 626.9373.

## COUNT II — DECLARATORY JUDGMENT (TOWER TWO)

106.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez re-allege paragraphs 1 through 106 as if fully set forth here.

107.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek the Court's declaration of the parties' rights and duties under the Policies under 28 U.S.C. § 2201.

108.    A justiciable controversy exists between TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez and

Crum about whether the Policies provide coverage for the claims against them in the Tower Two Lawsuit and if not all of the Policies, they seek a declaration from the Court as to which policies provide coverage.

109.    The controversy between TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez and Crum is ripe for judicial review.

110.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek a declaration that Crum had a duty to defend them and if not under all of the Policies, they seek a declaration from the Court as to which policies provide coverage.

111.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez also seek a declaration from the Court that Crum, under the Policies and in connection with the Tower Two Lawsuit, had a duty to indemnify all of them as additional insureds and if not under all of the Policies, they seek a declaration from the Court as to which policies provide coverage.

WHEREFORE, TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc.,

Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez seek a declaration from the Court that they are entitled to coverage, under the Policies, for the Tower Two Lawsuit, as well as attorneys' fees under Fla. Stat. 626.9373.

### COUNT III — BREACH OF CONTRACT (TOWER ONE)

112.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez re-allege paragraphs 1 through 112 as if fully set forth here.

113.    At all material times, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez were insured under the Policies, which are binding, valid, and enforceable contracts under Florida law.

114.    The damages in connection with the Tower One Lawsuit are covered by the Policies.  Thus, Crum owed TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez contractual obligations to defend them against the claims by the Association in the Tower One Lawsuit.

115.    None of the terms, provisions, conditions, or exclusions in the Policies bar coverage for the Tower One Lawsuit.

116.     Despite prompt notices of the claim and tenders to Crum by TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez, Crum never formally responded, never provided a defense, and refused to participate in any of the settlement efforts, despite verbally acknowledging coverage.

117.     Crum, through the acts of its agents, representatives, or employees, failed to perform its duties or obligations under the Policies, thereby materially breaching its contractual obligations (particularly after communicating with representatives of the Plaintiffs in 2019) when it did not defend TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez for damages stemming from the Tower One Lawsuit, despite countless demands and Crum's verbal acknowledgement of coverage in 2019.

118.     As a direct, proximate, and natural result of Crum's material breach, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez have been deprived of the benefits due under the Policies.

WHEREFORE, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez ask this Court to rule that Crum

materially breached the Policies and award their actual damages, pre- and post-judgment interest, and attorneys' fees under Fla. Stat. § 626.9373, costs, and any further relief this Court deems equitable, just, and proper.

## COUNT IV — BREACH OF CONTRACT (TOWER TWO)

119.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez re-allege paragraphs 1 through 119 as if fully set forth here.

120.    At all material times, TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez were insured under the Policies, which are binding, valid, and enforceable contracts under Florida law.

121.    The damages in connection with the Tower Two Lawsuit, including, but not limited to, the defense fees and costs incurred by TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez, as well as any amounts incurred in settlement by TRG Tower Two are covered by the Policies.  Thus, Crum owed TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC,

TRG Ft. Myers, Inc., and Jorge Perez contractual obligations to defend and indemnify them for the claims by the Association.

122.    None of the terms, provisions, conditions, or exclusions in the Policies bar coverage for the Tower Two Lawsuit.

123.    Crum agreed to defend TRG Tower Two, but without explanation, Crum withdrew its defense in April 2018.  To date, Crum has offered no formal explanation and has never issued a revised coverage position, despite the continuous requests throughout 2018, 2019, 2020, and 2021.

124.    Crum, through the acts of its agents, representatives, or employees, failed to perform its duties or obligations under the Policies, thereby materially breaching its contractual obligations when it withdrew its defense of TRG Tower Two in 2018 and subsequently failed to defend TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez for damages stemming from the Tower Two Lawsuit, despite countless demands by them.

125.    Likewise, Crum, through the acts of its agents, representatives, or employees, failed to perform its duties or obligations under the Policies, when it failed to indemnify TRG Tower Two for settlement of the Tower Two Lawsuit, thereby materially breaching its contractual obligation to indemnify TRG Tower Two, and also The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC,

Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez for liability stemming from the Tower Two Lawsuit, despite their many demands.

126.    As a direct, proximate, and natural result of Crum's material breaches, TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez have been deprived of the benefits due under the Policies.

WHEREFORE, TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez ask this Court to rule against Crum and award their actual damages, pre- and post-judgment interest, and attorneys' fees under Fla. Stat. § 626.9373, costs, and any further relief this Court deems equitable, just, and proper.

## COUNT V — ESTOPPEL (TOWER ONE)

127.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez re-allege paragraphs 1 through 126 as if fully set forth here.

128.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez provided notice to Crum of the Tower One Lawsuit multiple times, with no written response from Crum.

129.    Crum eventually, orally informed TRG Tower One that there was coverage for the Tower One Lawsuit and that a defense was or would be provided.

130.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez detrimentally relied on Crum's oral representation and were lulled into a false sense of security that Crum would provide coverage for the Tower One Lawsuit.

131.    Crum failed to defend the Tower One Lawsuit or provide coverage for the settlement of the Tower One Lawsuit.  Crum failed to respond to any further communications relating to the Tower One Lawsuit.

132.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez have been prejudiced as a direct, proximate, and natural result of their reliance on Crum's representations of coverage.

133.    TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez have suffered damages as result of their reliance on Crum's representations, including but not limited to, attorney's fees and the costs of settling the Tower One Lawsuit.

134.    As a result of its actions, Crum should be estopped from denying coverage for the Tower One Lawsuit.

WHEREFORE, TRG Tower One, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez ask this Court to rule that Crum is estopped from denying coverage under the Policies and award their actual damages, pre- and post-judgment interest, and attorneys' fees under Fla. Stat. § 626.9373, costs, and any further relief this Court deems equitable, just, and proper.

## COUNT VI — ESTOPPEL (TOWER TWO)

135.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez re-allege paragraphs 1 through 134 as if fully set forth here.

136.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez provided notice to Crum of the Tower Two Lawsuit multiple times.

137.    Crum acknowledged coverage for the Tower Two Lawsuit under two of the Policies and indicated it would appoint defense counsel.

138.    Crum appointed defense counsel a year later and assumed control of the defense of the Tower Two Lawsuit.

139.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez detrimentally relied on Crum's representation that the Tower Two Lawsuit was covered and were lulled into a false sense of security that Crum would provide coverage for the Tower Two Lawsuit and any resultant settlement or verdict.

140.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez have been prejudiced as a direct, proximate, and natural result of their reliance on Crum's representations, by, including but not limited to, allowing Crum to control the defense of the Tower Two Lawsuit, ceding control of the Tower Two Lawsuit to Crum, and allowing Crum to control and handle settlement communications.

141.    Crum withdrew defense of the Tower Two Lawsuit, with no notice to TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez, and settled the Tower Two Lawsuit on behalf of MCW.

142.    TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez have suffered damages as result of their

reliance on Crum's representations, including but not limited to, attorney's fees and the costs of settling the Tower Two Lawsuit after Crum impermissibly settled on behalf of MCW only.

143.    As a result of its actions, Crum should be estopped from denying coverage for the Tower Two Lawsuit.

WHEREFORE, TRG Tower Two, The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez ask this Court to rule that Crum is estopped from denying coverage under the Policies and award their actual damages, pre- and post-judgment interest, and attorneys' fees under Fla. Stat. § 626.9373, costs, and any further relief this Court deems equitable, just, and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated: May 25, 2022            HUNTON ANDREWS KURTH LLP

                          /s/ *Walter J. Andrews*
                          Walter J. Andrews, Esq.
                          Florida Bar No. 84863
                          Andrea DeField
                          Florida Bar No. 92344
                          Yaniel Abreu
                          Florida Bar No. 0113219
                          S. Alice Weeks
                          Florida Bar No. 1002667
                          HUNTON ANDREWS KURTH LLP
                          333 S.E. 2nd Ave., Suite 2400
                          Miami, Florida 33131
                          Tel:  (305) 810-2500
                          Facsimile: (305) 810-2460
                          wandrews@HuntonAK.com
                          adefield@HuntonAK.com
                          yabreu@HuntonAK.com
                          aweeks@HuntonAK.com

                          *Attorneys for TRG Oasis (Tower One), Ltd., TRG Oasis (Tower Two), Ltd., The Related Group, The Related Group of Florida, The Related Group, GP, The Related Group of Florida, GP, Related Florida, Ltd., Related Florida, Inc., Related General of Florida, Ltd., Related Florida, LLC, Perez Ross Holdings, LLC, Related General of Florida, LLC, TRG Ft. Myers, Inc., and Jorge Perez*

33